**Mildred KNIGHT and Bradford C. Hagerman, Plaintiffs,**

v.

**XEBEC, a California corporation, Xebec Development Corporation, a California corporation, Xebec Development Partners, Ltd., a California limited partnership, and E.F. Hutton & Company, Inc. now known as Shearson Lehman Hutton, Inc., Defendants.**

No. 88–583–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Oct. 17, 1990.

John P. Graves, Jr., Chartered, William T. Kirtley, P.A., Sarasota, Fla., for plaintiffs.

Peter W. Homer, Greer, Homer & Bonner, P.A., Miami, Fla., for defendants.

## ORDER COMPELLING ARBITRATION

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

Defendant Shearson Lehman Hutton, Inc.'s motion to compel arbitration of Plaintiff Bradford C. Hagerman's Complaint and to stay this action pending the outcome of the arbitration. Defendant's motion was filed May 10, 1989.

Plaintiff's response to Defendant Hutton's motion to compel arbitration, filed May 24, 1989.

### FACTS

1. Plaintiff Bradford C. Hagerman (Hagerman) is a former employee of Defendant Shearson Lehman Hutton, Inc. (Hutton). Hagerman executed a Hutton U-4 agreement in 1983. The agreement stated:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organization with which I register, as indicated in Question 8.

2. Hagerman and Plaintiff Mildred Knight (Knight) filed this claim against Hutton on April 27, 1988. The Complaint alleges improprieties originating out of Hagerman's and Knight's purchases of a limited partnership interest in Xebec Development Partners, Ltd. (Xebec) from Hutton.

3. On July 22, 1988, Defendant filed a motion to dismiss the Complaint and on September 20, 1988, filed a motion for a protective order staying discovery. The Court denied the motion for protective order and discovery began.

4. On March 9, 1989, Knight filed a separate lawsuit against Hutton concerning her purchase of interests in twenty-one limited partnerships.

5. On March 29, 1989, this Court denied Defendant's motion to dismiss the present suit.

6. On May 10, 1989, Defendant Hutton filed this motion, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2 and 3, to compel arbitration of Hagerman's Complaint and to stay this action pending the outcome of the arbitration.

7. Subsequently, on September 17, 1990, Knight's second suit was consolidated with the present action. Knight has no agreement with Hutton obligating her to arbitrate in this action.

8. Both Hagerman and Hutton are members of the New York Stock Exchange, Inc. (NYSE).

Defendant asserts that it has the right to compel arbitration while Plaintiff contends that Defendant has waived its right to arbitration and that Defendant is estopped from asserting that right.

### ENFORCEABILITY OF ARBITRATION AGREEMENTS

■ The NYSE constitution requires that all disputes between members be arbitrated. The applicable portion of the NYSE constitution is Article XI, ¶ 1501 which reads as follows:

Sec. 1. *Controversies Arbitrated.* Any controversy between parties who are members, allied members or member organizations and any controversy between

a member, allied member or member organization and any other person arising out of the business of such member, allied member or member organization, or the dissolution of a member organization, shall at the instance of any such party be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt.

An agreement to abide by the rules of an exchange such as the NYSE, which provides for arbitration of disputes among its members, is enforceable in federal court. *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209 (2d Cir.1972); *Wilcox v. Ho–Wing SIT,* 586 F.Supp. 561 (N.D.Cal.1981).

Title 9, United States Code, § 3, the Federal Arbitration Act, provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The Arbitration Act reflects the federal policy favoring the enforcement of arbitration agreements. In *Austin v. A.G. Edwards & Sons, Inc.,* 349 F.Supp. 615 (M.D. Fla.1972), the court expressly found that Title 9 was substantive federal law and as such it preempts conflicting state law. The *Austin* court ruled that "[A]ssuming the existence of a valid agreement to arbitrate, this court must stay this action until such arbitration has been performed." *Id.* at 616.

Other federal courts have addressed the enforcement of arbitration agreements. In *United States Textile Workers of America v. Newberry Mills, Inc.,* 315 F.2d 217 (4th Cir.1963), the court held that "[P]arties are bound to arbitrate all matters, not explicit-ly excluded, that reasonably fit within the language used." *Id.* at 219. The court in *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638 (7th Cir.1981), quoted from *United States Textile Workers of America v. Newberry Mills, Inc., supra* and noted the federal policy of construing arbitration agreements to resolve any doubt in favor of arbitration.

The Supreme Court of the United States held that state law claims were arbitrable in *Shearson/American Express, Inc. and Mary Ann McNulty v. Eugene McMahon et al.,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The Supreme Court relied on its previous decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The *McMahon* court also stated that "The Arbitration Act thus establishes a 'federal policy favoring arbitration,' *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765] (1983), requiring that 'we rigorously enforce agreements to arbitrate.' *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. at 221 [105 S.Ct. at 1242]."

## BURDEN OF PROOF

 In *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 694 (9th Cir.1986), the court held that a party seeking to prove waiver of a right to arbitration must demonstrate three elements:

1. knowledge of an existing right to compel arbitration;

2. acts inconsistent with that existing right; and

3. prejudice to the party opposing arbitration resulting from such inconsistent acts.

Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or the allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. at 24–25, 103 S.Ct. at 941–942.

## THE PARTIES' CONTENTS

Defendant Hutton contends that the consolidation of the two cases in this matter, to which it has stipulated, nullifies the justification for Hutton's earlier decision to forego arbitration. Therefore, Hutton argues, "[t]he litigation undertaken has not been inconsistent with an existing right considering that the circumstances upon which Hutton's initial decision had been made have so drastically changed." (Motion to Compel, p. 6).

Hutton further contends that Hagerman will not be prejudiced by the Court's granting the motion to compel arbitration. Hutton argues that Hagerman has had the advantage of considerable discovery that he would not have had if arbitration had been granted at the initial stages of litigation. Hutton assumes that Hagerman will argue that he has expended money on discovery and is prejudiced thereby. Hutton argues that the expense of discovery is insufficient prejudice to support an argument for waiver of a party's right to arbitration. Hutton cites *Fisher*, 791 F.2d at 697 in support of the contention.

Plaintiff Hagerman asserts waiver, estoppel and default in opposing Hutton's motion to compel arbitration. Hagerman contends that he has met the burden of proving the *Fisher* elements. Hagerman points out that Hutton knew about its right to compel arbitration, but acted inconsistently with the right because it did not file the motion to compel arbitration with its first responsive pleading and because Hutton filed other documents, including a motion to dismiss, a motion for a protective order, and an answer to Plaintiff's Complaint before filing the motion to compel arbitration.

Plaintiff further asserts that he has been prejudiced because Hutton has conducted discovery while Plaintiff Hagerman has been unable to do so. Hagerman states that Hutton has "obtained thousands of pages of documents and taken a day long deposition of Hagerman. On the other hand, they [Hutton] have embarked on a number of adventures to delay and/or bar Hagerman from obtaining meaningful discovery (in violation of the spirit of the rules) and, Hutton continues to do so." (Plaintiff's Response, p. 13). Hagerman adds that under the NYSE Arbitration Rules, no discovery is available to Hagerman unless Hutton voluntarily provides it. (*Id.*)

In examining Hutton's right to compel arbitration in light of the strong federal policy favoring enforcement of arbitration agreements, the Court finds that Hagerman's arguments opposing the motion to compel arbitration are unpersuasive. Accordingly, it is

ORDERED that Defendant Hutton's motion to compel arbitration and to stay this action pending the outcome of the arbitration is Granted.

DONE and ORDERED.