673 So.2d 170 (1996)
Francisco J. ACEVEDO, Jorge Luis Alvarez, Cesar A. Arias, Adrian Avila, Jorge L. Bernal, et al., Appellants,
v.
CARIBBEAN TRANSPORTATION, INC., Appellee.
No. 95-2725.
District Court of Appeal of Florida, Third District.
May 15, 1996.
*171 Rene A. Nunez, Miami Lakes; Maland & Ross and Robert C. Maland, Miami, for appellants.
Aurelio Durana, Coral Gables, for appellee.
Before BARKDULL, NESBITT and COPE, JJ.
BARKDULL, Judge.
The forty-six plaintiffs in the trial court were truckers employed by Caribbean Transportation, Inc. They filed a complaint against Caribbean in May of 1994 alleging fraud and unjust enrichment. They claimed that beginning in May of 1990, the president of Caribbean represented to them that the company would deduct the actual cost of insurance premiums from their wages, when in fact the company had deducted amounts in excess of the actual cost of the insurance. Caribbean filed several motions to dismiss and for a more definite statement. In September of 1994, Caribbean and the plaintiffs' collective bargaining agent entered into a collective bargaining agreement which provided for binding arbitration of any differences arising between the union or the employees and the company regarding wages, hours and working conditions and any and all other questions involving the agreement. The agreement was made retroactive to December of 1990. In December of 1994, Caribbean filed its answer which asserted as an affirmative defense the failure to "grieve this matter through the grievance procedure and arbitration clause contained in the collective bargaining agreement between the ILA and Defendant." Caribbean also filed a compulsory counterclaim for defamation at this time.
Thereafter, in December of 1994, Caribbean filed a Notice of Removal to Arbitration and Motion to Dismiss wherein it invoked arbitration pursuant to the collective bargaining agreement and sought dismissal of the complaint. Six months later, after the plaintiffs had conducted discovery, Caribbean filed an amended Notice of Removal to Arbitration and Motion to Dismiss attached to which was correspondence from the Union's attorney outlining the issues which it had submitted to arbitration. The issues were stated as:
1. Does custom and usage prohibit drivers from obtaining their own liability insurance?
2. Does the fact that Caribbean Transportation is charging in excess of the insurance premium for the drivers' liability and bobtail insurance allow drivers to obtain their own insurance?
The trial court granted the motion to dismiss and this appeal followed.
*172 The plaintiffs first contend that Caribbean waived its right to arbitration because it took an active part in the litigation and sought affirmative relief prior to filing a motion to compel arbitration. In addition, the plaintiffs claim that arbitration is permissive under the agreement and that the issues submitted by the union did not encompass the fraud and unjust enrichment claims for which the plaintiffs were seeking damages. Finally the plaintiffs assert that even if the right to arbitrate had not been waived, the proper procedure would have been for the lower court to stay the proceedings pending the outcome of the arbitration.
In contrast, Caribbean answers that it, as the employer, had no right to invoke arbitration and that only the union or the employee was entitled to do so pursuant to the terms of the collective bargaining agreement. Therefore, it asserts, it could not have waived its right to arbitrate by taking actions inconsistent with that right. Caribbean also contends that a prior collective bargaining agreement existed between it and the union. Caribbean finally asserts that the circuit court's jurisdiction was preempted by the National Labor Relations Act and therefore it could not stay an action over which it had no jurisdiction in the first instance.
We first address Caribbean's contention that the lower court is without jurisdiction over this action because the National Labor Relations Act preempts state power to the National Labor Relations Board and the federal courts in cases involving collective bargaining agreements. Section 301 preemption does not automatically divest state courts of jurisdiction, as Caribbean erroneously asserts, but only displaces state law causes of action that require interpretation of a collective bargaining agreement and mandates that federal law be applied. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988); Caterpillar, Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11, 105 S.Ct. 1904, 1911-11, 85 L.Ed.2d 206 (1985); Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 508, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962); Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962).
In cases involving fraud claims and section 301 preemption, the courts have generally held that if the plaintiffs would be required to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made, the fraud claims are preempted because they are substantially dependent upon the terms of the agreement. See Dougherty v. American Tel. & Tel. Co., 902 F.2d 201, 203-04 (2d Cir.1990) (employee's fraud claims not independent of collective bargaining agreement and state-law tort action would impermissibly circumvent the arbitration procedures of that agreement); Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 1001 (9th Cir.1987); Bale v. General Tel. Co. of Cal., 795 F.2d 775, 779-80 (9th Cir.1986). However, if the fraud claims are determined to be entirely separate and distinct from the provisions of the collective bargaining agreement and do not require interpretation of the agreement, then they are not necessarily preempted. Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1408-09 (9th Cir.1991), cert. denied 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). Similarly, claims brought by persons who are not parties to a collective bargaining agreement or who do not have access to the grievance procedures are rarely preempted. See Caterpillar, 482 U.S. at 396, 107 S.Ct. at 2431; White v. National Steel Corp., 938 F.2d 474, 484 (4th Cir.1991), cert. denied 502 U.S. 974, 112 S.Ct. 454, 116 L.Ed.2d 471 (1991); Berda v. CBS, Inc., 881 F.2d 20, 26 (3d Cir.1989), cert. denied 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990) (employee's state contract and tort claims for alleged misrepresentations regarding job security not preempted because the misrepresentations were made before employee became a member of the bargaining unit); McCarty v. Reynolds Metals Co., 883 F.Supp. 356, 361-62 (D.Ind.1995) ("§ 301 does not preempt state contract claims arising before the aggrieved employees became represented by a union or after the termination of the CBA.").
*173 In the case before us, the collective bargaining agreement sets out a procedure for resolution of grievances and states that this procedure applies to differences arising between the Union or the employees and the company regarding "wages, hours and working conditions and any and all other questions and controversies involving this Agreement...." Article XIX of the agreement relates to insurance and states that the matter of insurance is covered under a separate letter addendum to the contract. This separate letter addendum is not found in the record.[1] But it is clear from the plain language of this article that insurance matters between the employee and the company were intended to be encompassed by the agreement. However, we need not determine whether the plaintiffs' state law fraud and unjust enrichment claims are preempted in this case because the arbitration provision is dispositive.
The collective bargaining agreement sets out a grievance procedure which includes an arbitration provision. The plaintiffs assert that the grievance procedure and right to arbitrate are discretionary. They also allege that some of the acts that constitute the fraud took place prior to the effective date of the collective bargaining agreement. Accordingly, we must determine whether or not the parties had a duty to arbitrate this matter before pursuing legal action and whether the acts that allegedly occurred prior to the effective date of the collective bargaining agreement are also subject to arbitration.
We first note that "unless a collective bargaining agreement clearly manifests a contrary intent, it is for the courts, not the arbitrator, to decide whether the parties to that agreement have agreed to submit specific disputes to arbitration." Gangemi v. General Elec. Co., 532 F.2d 861, 865 (2d Cir. 1976). See also AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). This is due to the principle that the courts are powerless to compel arbitration in the absence of a contract in which both parties have agreed to submit their grievances to arbitration. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Countering this established principle of contract law is the national policy favoring resolution of labor disputes by arbitration. See Sections 201(a) and 203(d) of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 171(a), 173(d). Therefore, all doubts as to whether an issue is arbitrable pursuant to a collective bargaining agreement should be resolved in favor of arbitration. Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1352-53.
Plaintiffs contend that this particular arbitration provision is discretionary and that they do not have a duty to avail themselves of the grievance procedure before initiating legal action on their fraud claim. They point to the language that states, "[i]f the grievance is still not settled, either party may request arbitration of the grievance." We do not agree that this language compels a conclusion that the plaintiff has no duty to pursue arbitration.[2] Identical language in similar provisions of collective bargaining agreements has been interpreted under federal law to mandate arbitration. Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n, Local 1969, 683 F.2d 242, 246 (7th Cir.1982) ("That a collective bargaining agreement uses the word `may' or other facially `permissive' language in establishing arbitration procedures does not necessarily give a party to that agreement the option of either submitting its claim to arbitration or by passing arbitration and seeking immediate recourse to the courts."); United Steelworkers of America v. Fort Pitt Steel Casting, 598 F.2d 1273, 1279 (3d Cir.1979); J.C. Bonnot v. Congress of Independent Unions Local # 14, 331 F.2d 355, 359 (8th Cir.1964) (Blackmun, J.) ("The obvious purpose of the *174 `may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim. The presence of this or similar language has not prevented the conclusion that a claim, if pressed, is compulsorily subject to arbitration.").[3] In addition, federal labor policy requires that employees attempt to exhaust the available contractual grievance procedures before resorting to state tort claims. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (federal labor policy generally requires that employees wishing to assert contract grievances must avail themselves of the contract grievance procedure); Strachan v. Union Oil Co., 768 F.2d 703, 704 (5th Cir.1985) ("The law is completely clear that employees may not resort to state tort or contract claims in substitution for their rights under the grievance procedure in a collective bargaining agreement."). Therefore, if the acts complained of are determined to be matters that the parties agreed to arbitrate, and they occurred when the collective bargaining agreement was effective, then both parties have contractually bound themselves to pursue arbitration before instituting legal action. See also Reese v. Mead Corp., 79 Lab.Cas. (CCH) P 11,732, 22,005, 1975 WL 1219 (N.D.Ala.1975), aff'd mem., 529 F.2d 1350 (5th Cir.1976) ("Under these circumstances, it would seem entirely inappropriate to conclude that employees could cast aside the contract procedure by merely alleging that statements made by the employer amounted to fraud."). Generally, an exclusion of a claim which is on its face covered under a broad arbitration provision must be stated explicitly in the agreement. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567-68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).
In this case, it would appear that a grievance consisting of claims that excess amounts were deducted from the plaintiffs' wages for insurance premiums would be encompassed by both the broad clause that pertains to differences concerning "wages, hours and working conditions", and also Article XIX governing insurance.
However, the plaintiffs assert that the misrepresentations as to the amounts that would be deducted from their wages occurred in May of 1990. The collective bargaining agreement was made retroactive to December of 1990. Caribbean asserts that a prior collective bargaining agreement existed, but it is not in the record before us. The Supreme Court has held that "individual employment contracts are not inevitably superseded by any subsequent collective bargaining agreement covering an individual employee, and claims based upon them may arise under state law." Caterpillar, 482 U.S. at 396, 107 S.Ct. at 2431. The federal courts have also held that an arbitrator has no jurisdiction to rule on grievances that occurred outside the effective period of a collective bargaining agreement. Litton Financial Printing v. N.L.R.B., 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica de P.R., Local 610, 811 F.Supp. 41 (D.P.R. 1993); Hospital Employees, Local 1273 v. Deaton Hosp. & Med. Ctr., 671 F.Supp. 1049 (D.Md.1986). If there was no collective bargaining agreement in existence in May of 1990, then we are compelled to conclude that neither party agreed to arbitrate claims that arose between May of 1990 and December of 1990 and also that an arbitrator would have no jurisdiction to adjudicate the alleged fraudulent acts that occurred prior to the effective date of the agreement. Consequently, not only would the plaintiffs have no duty to arbitrate matters that arose before the effective date of the collective bargaining agreement, those claims would also not be preempted under section 301 since their resolution would not require interpretation of the collective bargaining agreement.
Since we are unable to discern whether or not there was a prior collective bargaining agreement in effect in May of 1990, and that *175 determination is dispositive of this issue, we must reverse and remand with directions to the trial court to determine whether there was a previous collective bargaining agreement in existence in May of 1990. If so, then the order of dismissal was proper. Baker v. Farmers Elec. Co-op., Inc., 34 F.3d 274, 284 (5th Cir.1994) (a claim is properly dismissed if a party has failed to exhaust the grievance procedures in the collective bargaining agreement). If there was no previous collective bargaining agreement, and it is determined that some or all of the acts complained of did take place prior to December of 1990, then the parties did not contract to arbitrate these matters and these claims should be resolved in the trial court.
As to the plaintiffs' claims that Caribbean waived its right to arbitrate this matter, we affirm the trial court's implicit finding that there was no waiver of the right to arbitrate. Since the terms of the collective bargaining agreement must be interpreted under federal law, the Florida cases cited by the plaintiffs to support their contention of waiver are inapplicable. See Miami Dolphins, Ltd. v. Cowan, 601 So.2d 301 (Fla. 3d DCA 1992). Under federal law, the courts invariably find that no waiver has occurred where parties who assert a right to arbitration have made relatively little use of the judicial process and the party opposing arbitration cannot show that it would be prejudiced. See e.g. Rush v. Oppenheimer & Co., 779 F.2d 885 (2d Cir.1985) (defendant did not waive arbitration by participating in pretrial discovery, or by filing a motion to dismiss and a subsequent answer even though it waited eight months to raise the issue); Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457 (2d Cir.), cert. denied 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985) (defendant did not waive arbitration where it moved to dismiss on the merits, engaged in discovery, and asserted right to arbitrate two years after complaint was filed); Mautz & Oren, Inc. v. Teamsters Local No. 279, 882 F.2d 1117, 1126 n. 16 (7th Cir.1989) (arbitration required where defendant raised arbitration as affirmative defense in answer). A showing that a party waited a period of time before moving to compel arbitration is not in itself sufficient evidence of prejudice. Rush at 887. Thus, a party asserting a waiver of arbitration must show that the other party has engaged in substantially more litigation than is evident in this case. We note also that any claims of waiver that necessarily involve interpretation of the collective bargaining agreement, such as time limits for bringing a grievance, are the province of the arbitrator. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).
In this case, Caribbean waited approximately seven months before moving to compel arbitration. It filed several motions to dismiss and a compulsory counterclaim and did not initiate any discovery. In addition, the plaintiffs do not suggest how they would be prejudiced by proceeding to arbitration at this time. Therefore, the plaintiffs have not met their burden of showing that the elements of a waiver of the right to arbitrate under federal law are met in this case.
The dismissal of the claims that arose post-December 1990 is affirmed, but the dismissal is reversed as to claims that arose between May of 1990 and December of 1990, and the matter remanded to the trial court for further proceedings in connection therewith, consistent with this opinion.
Affirmed in part, reversed in part and remanded with directions.
NOTES
[1] Neither party has raised the issue that such a letter would be controlling on this point.
[2] Neither do we agree with Caribbean's contention that it had no right to invoke arbitration pursuant to this clause. This language refers to "either party" to the agreement and it is clear that the parties to the agreement are the union and the employer, Caribbean. Also patently refuting Caribbean's contention is the fact that it did actually invoke arbitration of the instant claims.
[3] We emphasize that these cases refer only to the interpretation under federal law of arbitration clauses in collective bargaining agreements.